E-FILED
Wednesday, 06 July, 2022 04:19:36 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH PRICE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 21-cv-4160-MMM |
| ) | |
| HILL CORRECTIONAL CENTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MERIT REVIEW ORDER – THIRD AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files a Third Amended Complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs at Hill Correctional Center ("Hill"). (Doc. 29). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### ALLEGATIONS

While in the med line at Hill on February 27, 2021, Plaintiff alleges that he told Defendant Komer, a licensed practical nurse, that he was experiencing very bad pain on his left side. Komer told Plaintiff that he needed to request a sick call. Plaintiff put in for sick call that night.

The following day, Plaintiff saw Defendant Komer in the cell house corridor right outside of the c-wing door. It is unclear precisely what occurred during this encounter, but at some point, Plaintiff alleges that Sergeant Jabes came out of the office and told Plaintiff to go back to his wing.

Later that day or the next day, Defendant Komer called Plaintiff to the office and asked him to sign a refusal pursuant to an order from Defendant Boone, the Health Care Unit ("HCU") Administrator. Plaintiff alleges that Boone does not have the power to do that because she is not a doctor. Plaintiff states that the refusal was to be put in a room in the HCU. By this point, Plaintiff claims that "the pain was so bad rubber bands was popping inside me." (Doc. 29 at 5).

On March 2, 2021, Plaintiff's cellmate called for help so Plaintiff could be taken to the HCU. Defendant Kramer, a nurse practitioner, ordered a chest x-ray and EKG and directed Plaintiff to be placed in a room in the HCU. She allegedly did not exam Plaintiff on March 2, 2021, and did not see him again until March 9, 2021.

On March 3, 2021, an unidentified nurse noticed that Plaintiff was in a lot of pain and was not improving and ordered Plaintiff to be taken by ambulance to the hospital. The doctor who examined Plaintiff at the hospital allegedly told Plaintiff that he had a COPD and emphysema attack. The doctor prescribed medication to treat Plaintiff's cough and pain.

Plaintiff returned to Hill on March 4, 2021, and was placed in the same room in the HCU. On March 5, 2021, Plaintiff noticed a large black bruise on his left side approximately twelve inches long and six inches wide. Plaintiff states that an unidentified nurse in the HCU notified Defendant Boone about Plaintiff's bruise so she could see how bad it was. Plaintiff asked Boone why Defendant Kramer had not returned to see him, and Boone replied that Kramer was busy taking care of everyone because Hill no longer had a doctor.

On March 9, 2021, Defendant Kramer saw Plaintiff during her rounds in the HCU. Plaintiff told Kramer that he had been in the same room for several days; it had not been cleaned; and he could not breathe due to the dust. Plaintiff signed a paper to be released from the HCU because Kramer told him that "it was [his] 'demise' that [he] was going to die in a room in the HCU because of [his] COPD, emphysema, [and] asthma." *Id.* at 6. Defendant Boone ordered Plaintiff to remain in the HCU for one more day. On March 10, 2021, Plaintiff returned to his cell house.

On March 15, 2021, Plaintiff was called to have an updated picture taken. When Assistant Warden Williams came into the room, Plaintiff showed him the big black bruise. Williams said, "what is that?" *Id.* Plaintiff states that he had a small lump on his left side at that time, but it is now "a very big lump." *Id.* Plaintiff alleges that Defendant Boone called him to the HCU and placed him in the first aid room, where they were joined by Defendant Kramer and Defendant Don Wood, the Director of Nursing. Kramer told Plaintiff that he had "hyperextension lung" and would see Dr. Osmundson, the Medical Director, for an examination on May 5, 2021. *Id.*

Plaintiff returned to the HCU on May 5, 2021, for his appointment from Defendant Osmundson. Plaintiff alleges that Dr. Osmundson put his hand on Plaintiff's penis and testicles during the examination. Plaintiff told Dr. Osmundson that there was nothing wrong with his genitals, but he placed his hand on Plaintiff's genitals a second time. Plaintiff opened the door and yelled for an aid to help. Plaintiff claims that "it was nothing but a set up by HCUA Boone, Don Wood, [and] NP Kramer." *Id.* at 7.

The next day, Plaintiff called the Prison Rape Elimination Act ("PREA") hotline multiple times to make a complaint about Defendant Osmundson.[1] Plaintiff was then seen by Defendant Little, who Plaintiff claims did nothing.

---

[1] 42 U.S.C. § 15601, *et seq.*

3

On August 30 and 31, 2021, Plaintiff continued to call the PREA hotline. On September 1, 2021, Defendant Crouse, a lieutenant at Hill, called Plaintiff to sign a complaint against Dr. Osmundson. An investigation was completed only twelve days later.

Plaintiff alleges that Grievance Officer Garza, who is not named as a defendant, will not answer his grievance and he is unable to get the medical care he needs from Defendants Kramer and Dr. Osmundson because he filed a lawsuit against them.

## ANALYSIS

### *Defendants Komer, Kramer, Boone, and Wood*

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996).

The allegations against Defendants Komer, Kramer, Boone, and Wood are too vague to state a claim for deliberate indifference and do not demonstrate that Defendants knew of a substantial risk of harm to Plaintiff and failed to act in disregard of that risk. *See Arnett*, 658 F.3d at 751. When Plaintiff began experiencing a bad cough and pain, he was admitted to the HCU, medical staff monitored his condition, and he was taken to the hospital when his condition worsened and treated by a doctor. Upon his return from the hospital, Plaintiff remained in the HCU

for several more days. It appears that he asked to be discharged because the room was dusty and had not been cleaned, but it is unclear from Plaintiff's complaint if he requested that the room be cleaned or if he was denied cleaning supplies.

Additionally, after Defendants were notified about the bruise on Plaintiff's side, an appointment was arranged with Defendant Osmundson, the Medical Director, for further examination and treatment. There is no indication that Defendants Komer, Kramer, Boone, and Wood knew that Defendant Osmundson would sexually assault Plaintiff during this appointment, and they are not responsible for his alleged actions.

Plaintiff states that he has been denied medical care by Kramer and Dr. Osmundson because he filed a lawsuit against them, but he fails to state whether he requested sick calls or if was also denied visits with other medical staff at Hill.

Defendants Komer, Kramer, Boone, and Wood are DISMISSED without prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will be given a final opportunity to file a Fourth Amended Complaint within 30 days.

***Defendant Dr. Osmundson***

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Where prison officials harass or touch an inmate in a "manner intended to humiliate and inflict psychological pain," such conduct may constitute cruel and unusual punishment under the Eighth Amendment, even if no serious physical injury results. *Id.*; *see also Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (explaining the alleged pain sufficient to constitute an Eighth Amendment violation may be physical or

5

psychological); *Lieberman v. Budz*, No. 00 C 5662, 2013 WL 157200, at *14 (N.D. Ill. Jan. 15, 2013) (stating "the right of a prisoner or detainee to be free from sexual harassment" is clearly established, including the right "not to be groped for sexual reasons"). Here, the Court finds that Plaintiff has sufficiently alleged that Defendant Osmundson violated his Eighth Amendment rights when Defendant touched Plaintiff's genitals during a medical examination when there was no apparent medical or penological justification for so doing.

*Defendants Little and Crouse*

Plaintiff states that after he was allegedly assaulted by Dr. Osmundson, he called the PREA hotline multiple times before he was seen by Defendant Little, who Plaintiff alleges did "nothing." It is unclear from Plaintiff's complaint what Little was in the position to do in response to Plaintiff's calls.

Plaintiff alleges that Defendant Crouse called him to sign a complaint against Dr. Osmundson on September 1, 2021, and an investigation was completed only twelve days later. Although it appears there was some delay between when the alleged assault occurred and when the complaint was signed on September 1, 2021, it is unclear how Plaintiff was harmed or why Crouse is responsible.

Plaintiff's allegations against Little and Crouse are too vague to state a federal claim. *See* Fed. R. Civ. P. 8. Therefore, Defendants Little and Crouse are DISMISSED without prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will be given a final opportunity to file a Fourth Amended Complaint within 30 days.

*Exhaustion of Administrative Remedies*

Finally, Plaintiff indicates that he filed a grievance concerning the facts in his complaint, but he admits that the grievance process is not complete. (Doc. 29 at 4). Plaintiff must complete

the grievance process before filing a lawsuit, not after. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). If a prisoner fails to follow all of the necessary grievance procedures, the claim will not be exhausted, and will be barred, even if there are no remaining administrative remedies available. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). It is recognized that the failure to exhaust is "an affirmative defense that ordinarily should be raised—and must be proven—by the defendant. A district court may dismiss a complaint where 'the existence of a valid affirmative defense, such as the failure to exhaust, is so plain from the face of the complaint that the suit can be regarded as frivolous…But the defense must be unmistakable….'" *Boyce v. Illinois Dep't of Corr.*, 661 F. App'x 441, 443 (7th Cir. 2016) (internal citations omitted). Here, it is unclear why the grievance process is not complete, as Plaintiff provided no explanation in his complaint. Plaintiff is hereby placed on notice that, if he failed to exhaust prison grievance procedures which were available to him, his complaint must be dismissed. Out of an abundance of caution, Plaintiff will be given an opportunity to address this issue in the event that he files an amended complaint.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the deliberate indifference claim as stated above against Defendant Dr. Osmundson. All other claims are dismissed and will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of Court pursuant to Federal Rule of Civil Procedure 15.

2. Defendants Komer, Kramer, Boone, Wood, Little, and Crouse are DISMISSED without prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff shall have a final opportunity to file a Fourth Amended Complaint within 30 days from the entry of this Order. Plaintiff's Fourth Amended Complaint will replace Plaintiff's Third

Amended Complaint in its entirety. The Fourth Amended Complaint must contain all allegations against all Defendants. Piecemeal amendments are not accepted.

    3.    Plaintiff's Motion to Request Counsel [32] is DENIED. The Court cannot order an attorney to accept pro bono appointment on a civil case such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). Plaintiff has made reasonable efforts to find counsel, so the question is "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id*. at 655. "[T]he district court must consider both halves of this equation—the difficulty of the case and the competence of the litigant." *Bracey v. Grondin*, 712 F.3d 1012, 1016-17 (7th Cir. 2013). Relevant factors as to competency include, but are not limited to, a plaintiff's literacy, education, litigation experience, communication skills, psychological history, intellectual capacity, physical and mental health, and ability to conduct discovery. *Id*. at n. 3 (citing *Pruitt*, 503 F.3d at 655). The inquiry is individualized, taking all the relevant facts into consideration, including the stage of the litigation. *Navejar v. Igiola*, 718 F.3d 692, 696 (7th Cir. 2013). Plaintiff's claim of deliberate indifference is not complex and involves issues of which Plaintiff has direct, personal knowledge. The Court finds that Plaintiff appears competent to litigate the case himself, especially at this early stage of the litigation process.

    4.    This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5. The Court will attempt service on Defendant by mailing a waiver of service. Defendant has 60 days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.

6. If Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7. Defendant shall file an Answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendant's position. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the Answer is necessary or will be considered.

8. This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendant's counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned

unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9. Counsel for Defendant is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the deposition.

10. Plaintiff shall be provided a copy of all pertinent medical records upon request.

11. Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12. If Defendant fails to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

13. Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

14. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: July 6, 2022

                                                      s/ Michael M. Mihm
                                                     Michael M. Mihm
                                                     U.S. District Court Judge