E-FILED
Thursday, 17 November, 2022  02:43:20 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOSEPH PRICE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 21-cv-4160-MMM** |
| | ) | |
| KURT OSMUNDSON, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MERIT REVIEW ORDER – FOURTH AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files a Fourth Amended Complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs at Hill Correctional Center ("Hill"). (Doc. 43). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### ALLEGATIONS

Plaintiff alleges that while he was in the med line on February 27, 2021, he told Defendant Komer, who was passing out medication, that he was experiencing bad pain on his left side when he coughed. Komer, a licensed practical nurse, instructed Plaintiff to request a sick call appointment. On February 28, 2021, Komer called Plaintiff to the C-wing door for his appointment

1

and allegedly began yelling at him when he arrived. Upon hearing the commotion, Sergeant Jabes came out of his office and told Plaintiff to return to his wing. Plaintiff went back to his wing without being examined and now claims that Komer denied him medical care.

Plaintiff next alleges that on March 2, 2021, the pain in his side became so bad that his cellmate had to call for medical attention. Sergeant Jabes, Nurse Coper, and an unidentified nurse came to his cell. Segreant Jabes helped Plaintiff into a wheelchair and took him to the Health Care Unit ("HCU"). Defendant Kramer, a nurse practitioner, ordered a chest x-ray and EKG.

On March 3, 2021, Nurse Spitzig called for an ambulance to take Plaintiff to the hospital. Plaintiff alleges that he had a large black bruise on his left side caused by burst blood vessels. At the emergency room, a doctor examined Plaintiff and ordered a CT scan. The doctor allegedly informed Plaintiff that he had a COPD and emphysema attack and that his blood vessels were popping when he coughed. The doctor prescribed medication to treat Plaintiff's cough and pain. Plaintiff then returned to Hill.

On March 4, 2021, an unidentified nurse notified Defendant Boone, the HCU Administrator, about the bruise on Plaintiff's side. Boone examined the bruise and asked Plaintiff how long it had been there. Plaintiff told Boone that he was not sure and asked where Defendant Kramer was. Boone informed him that Kramer was busy taking care of other inmates because Hill no longer had a doctor.

Plaintiff alleges that he did not see Kramer again until March 9, 2021, when she made her weekly rounds. Plaintiff alleges that Kramer denied him the medications the hospital doctor had prescribed, even though he still had a bad cough.

When Plaintiff asked to be released from the HCU due to the dust and dirt in his room, Kramer told Plaintiff to sign a document stating that he refused to be housed in the HCU. He

alleges that Kramer told him that "it was [his] demise that [he] was going to die in a room in the HCU." *Id.* at 3. Plaintiff signed the paper to be released; however, Boone allegedly ordered Plaintiff to remain in the HCU another day.

On March 15, 2021, Plaintiff showed Warden Williams the bruise on his side when he was having an updated identification picture taken. Plaintiff alleges that Williams said he would look into it, but nothing was ever done.

Plaintiff next alleges that Defendant Boone called him to the HCU and placed him in a room with Defendants Kramer and Don Wood, the Director of Nursing. Kramer allegedly told Plaintiff that he had "hyperextension lung" and would see Defendant Dr. Kurt Osmundson for an examination on May 5, 2021. *Id.* at 4.

Plaintiff returned to the HCU for his appointment with Defendant Osmundson on May 5, 2021. Plaintiff alleges that Boone asked Osmundson if he would like the door open or closed during the exam. Osmundson allegedly asked Boone to close the door. Boone, Kramer, and Wood remained in the hallway during the exam. Plaintiff alleges that Osmundson came up behind him with his back to the door so he would not be seen, placed his right hand on Plaintiff's chest, and then proceeded to touch his genitals. Plaintiff told Osmundson that there was nothing wrong with his genitals, but Osmundson allegedly placed his hand on Plaintiff's genitals a second time.

On May 6, 2021, Plaintiff called the Prison Rape Elimination Act[1] ("PREA") hotline to report Defendant Osmundson's conduct. The same day, Sergeant Ruhl called Plaintiff to the HCU, where two nurses asked Plaintiff to explain what happened.

Plaintiff alleges that he called the PREA hotline multiple times to no avail. At some point, Plaintiff talked to Defendant Officer Little, who allegedly took no action. Plaintiff alleges that he

---

[1] 42 U.S.C. § 15601, *et seq.*

3

threatened to contact the newspapers unless something was done. Defendant Lieutenant Crouse then called Plaintiff to his office, and Plaintiff told him everything that had happened.

Plaintiff next alleges that he notified the Court that "blood was coming out of his penis and butt." *Id.* at 5. Plaintiff alleges that on June 30, 2022, Nurse Heather Doglas took him into Defendant Osmundson's office because she was upset that Plaintiff kept coming to sick call. Osmundson told Plaintiff to "drop [his] pants," and Plaintiff complied. *Id.* at 6. He alleges that Osmundson "then took two finger[s] an[d] ram[med] his two finger[s] up [his] butt not only one time but two times[s]." *Id.* Plaintiff alleges that he was yelling due to the pain and that it felt like Osmundson, who allegedly had a "big smile on his face," was "trying to pull [his] insides out of [his] butt." *Id.*

Plaintiff also states that he has a very big hernia and a broken rib because he was never examined by Defendants Osmundson or Kramer.

## ANALYSIS

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996).

*Defendant Komer*

While in a med pass line, Plaintiff told Defendant Komer that he was experiencing a bad cough and pain on February 27, 2021. Plaintiff had a sick call appointment with Komer the following day, but it appears that the appointment was cut short when Komer began yelling at Plaintiff for an unknown reason. These allegations are insufficient to state a claim of deliberate indifference against Defendant Komer. She is DISMISSED with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Court finds that any attempt to amend would be futile as Plaintiff has had multiple opportunities to amend his complaint.

*Defendant Kramer*

Plaintiff alleges that Defendant Kramer denied him the medications the hospital doctor prescribed and that he still had a bad cough. Plaintiff will be allowed to proceed on a deliberate indifference claim against Defendant Kramer for the alleged denial of these medications. The Court finds that all other allegations against Defendant Kramer are insufficient to establish an alleged violation of the Eighth Amendment. The remaining claims against Defendant Kramer are dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.SC. § 1915A.

*Defendants Boone and Wood*

Plaintiff alleges that Defendant Boone closed the door during the examination with Dr. Osmundson and that Defendants Boone, Wood, and Kramer stood outside the door. These allegations are insufficient to state a claim against Defendants. There is no indication that Defendants knew that Defendant Osmundson would allegedly assault Plaintiff, and they are not responsible for his alleged actions. Defendants Boone and Wood are DISMISSED with prejudice

for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Court finds that any amendment would be futile as Plaintiff has had multiple opportunities to plead a viable federal claim against these Defendants.

### Defendant Dr. Osmundson

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Where prison officials harass or touch an inmate in a "manner intended to humiliate and inflict psychological pain," such conduct may constitute cruel and unusual punishment under the Eighth Amendment, even if no serious physical injury results. *Id.*; *see also Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (explaining the alleged pain sufficient to constitute an Eighth Amendment violation may be physical or psychological); *Lieberman v. Budz*, No. 00 C 5662, 2013 WL 157200, at *14 (N.D. Ill. Jan. 15, 2013) (stating "the right of a prisoner or detainee to be free from sexual harassment" is clearly established, including the right "not to be groped for sexual reasons").

Here, the Court finds that Plaintiff has sufficiently alleged that Defendant Osmundson violated his Eighth Amendment rights when Defendant touched Plaintiff's genitals during a medical examination when there was no apparent medical or penological justification for so doing. Plaintiff will also be allowed to proceed on his deliberate indifference claim regarding the examination on June 30, 2022, when Defendant Osmundson allegedly "rammed" two fingers in Plaintiff's anus twice during an exam, causing Plaintiff pain and psychological distress.

Plaintiff also complains that he has a broken rib and a large hernia and that Defendants Osmundson and Kramer have not examined him. He does not offer any additional details about

these conditions. He fails to state whether he requested sick calls or if was also denied visits with other medical staff at Hill. These allegations are insufficient to state a claim of deliberate indifference against Defendants.

### Defendants Little and Crouse

Plaintiff states that after he was allegedly assaulted by Dr. Osmundson, he called the PREA hotline multiple times before he was seen by Defendant Little, who Plaintiff alleges did "nothing." It is unclear from the sparse allegations what Defendants Little and Crouse allegedly failed to do. The Court finds that Plaintiff's allegations against Defendants Little and Crouse are too vague to state a federal claim. *See* Fed. R. Civ. P. 8. They are DISMISSED with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Court finds that allowing Plaintiff to file a Fifth Amended Complaint would be futile, as Plaintiff has had multiple opportunities to plead a viable federal claim against them.

### Warden Williams

While having an updated identification photo taken, Plaintiff alleges that he showed Warden Williams the bruise on his side. Williams allegedly did not take any action. As a non-medical prison official, Warden Williams is entitled to rely on the opinions of medical staff. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). "If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). When the conversation with Warden Williams occurred, Plaintiff was under the care of medical staff. "[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). There is no *respondeat superior* culpability under § 1983. If state prison officials are named, they

must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Warden Williams is DISMISSED with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Court finds that any amendment would be futile as Plaintiff has had multiple opportunities to plead a viable federal claim against Williams and has not done so.

## MOTIONS TO REQUEST COUNSEL

Plaintiff has filed a letter and two Motions to Request Counsel. (Docs. 45, 46, and 50). Plaintiff does not have a constitutional or statutory right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). When evaluating a motion for the recruitment of pro bono counsel, the court "should engage in a two-step inquiry: '(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022) (quoting *Pruitt*, 503 F.3d at 655). The district court may also consider "the perceived merits of–or likelihood of success on–an indigent plaintiff's claims in its decision whether to allocate scarce pro bono counsel resources to the case before it." *Watts*, 42 F.4th at 764.

The Court previously found that Plaintiff made a reasonable effort to find counsel. (Doc. 33 at 8). The next inquiry is "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id*. at 655. "[T]he district court must consider both halves of this equation—the difficulty of the case and the competence of the litigant." *Bracey v. Grondin*, 712 F.3d 1012, 1016-17 (7th

8

Cir. 2013). Relevant factors as to competency include, but are not limited to, a plaintiff's literacy, education, litigation experience, communication skills, psychological history, intellectual capacity, physical and mental health, and ability to conduct discovery. *Id*. at n. 3 (citing *Pruitt*, 503 F.3d at 655). The inquiry is individualized, taking all the relevant facts into consideration, including the stage of the litigation. *Navejar v. Igiola*, 718 F.3d 692, 696 (7th Cir. 2013).

Finding an attorney willing to take a case like this without pay is difficult. Therefore, the Court only searches for pro bono counsel when a plaintiff truly does not appear able to proceed pro se on his claims. That an attorney would do a better job is not the test, otherwise nearly all pro se civil plaintiffs would be entitled to pro bono counsel. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006).

Plaintiff asserts that he is handicapped and has mental and physical disabilities; he has a broken rib and a large hernia on his left side, which prevents him from writing for long periods; he needs to lie down most of the time because of his spine and neck; and he does not understand legal mail he received Defendant Osmundson's attorney. (Docs. 45, 46, and 50). Plaintiff has personal knowledge of the physical symptoms he experienced and what care he received. Plaintiff should be provided with his relevant medical records as part of Defendants' initial disclosures. Plaintiff may also send questions for Defendants to defense counsel. Plaintiff's filings are reasonably coherent, and Plaintiff does not maintain that someone else wrote those filings. On this record, Plaintiff appears competent to proceed pro se, especially at this early stage of the litigation process. The Court sees no detriment, at this time, to Plaintiff proceeding on his own. Plaintiff's Motions are DENIED with leave to reassert, if necessary.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the deliberate indifference claims as stated above against Defendants Kramer and Osmundson. All other claims are dismissed and will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of Court pursuant to Fed. R. Civ. P. 15.

2. Defendants Komer, Boone, Wood, Little, Crouse, and Williams are DISMISSED WITH PREJUDICE for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. The Court finds that any amendment would be futile because Plaintiff has had multiple opportunities to plead a viable federal claim against these Defendants and has failed to do so.

3. Plaintiff's Motion for Reconsideration [44] regarding the Court's merit review of his Third Amended Complaint is MOOT based on the filing of Plaintiff's Fourth Amended Complaint.

4. As stated above, Plaintiff's Motions to Request Counsel [46], [50] are DENIED.

5. Plaintiff's Motion for Order [47] asking the Court to compel Hill Correctional Center to produce his medical records is DENIED. Plaintiff states that he "put in" for his medical records three times, but his requests were denied. As the Court previously advised, however, the proper procedure is to file an authorization for release of the records. Plaintiff does not indicate that he has taken this step in the administrative process. Plaintiff may reassert this motion if he submits the proper paperwork and the medical records are still not provided to him.

6. Defendant Osmundson filed an Answer to Plaintiff's Third Amended Complaint on August 31, 2022. (Doc. 48). As Defendant has already appeared and answered, the Clerk does not need to issue a waiver for Defendant Osmundson.

7.     The Court will attempt service on Defendant Kramer by mailing a waiver of service. Defendant has 60 days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.

8.     If Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9.     Defendant shall file an Answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendant's position. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the Answer is necessary or will be considered.

10.     This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendant's counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned

11

unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

11.     Counsel for Defendant is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the deposition.

12.     Plaintiff shall be provided a copy of all pertinent medical records upon request.

13.     Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

14.     If Defendant Kramer fails to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

15.     Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk entered the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act on July 6, 2022. (Doc. 34).

16.     The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.


ENTERED:    11/17/2022

                                                    s/ Michael M. Mihm
                                                    Michael M. Mihm
                                                    U.S. District Court Judge